IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KEVIN RAINS | § |
| | § |
| VS. | § CIVIL ACTION NO.4:06-CV-858-Y |
| | § |
| BNSF RAILWAY COMPANY | § |

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Kevin Rains commenced this suit under section one of the Federal Employers Liability Act ("FELA") seeking damages for injuries he claims he sustained after a slip and fall while working as a conductor for defendant BNSF Railway Company ("BNSF"). Rains contends that his injuries were caused, in whole or in part, by the negligence of BNSF in failing to keep a walkway along a railway bridge clear of ballast.[1] The Court has before it BNSF's motion (doc. #57) for summary judgment. After review of pleadings, the Court concludes that BNSF is entitled to summary judgment in its favor.

I. Factual Background

On October 1, 2004, Rains was the conductor on a BNSF freight train traveling from Wellington, Kansas, to Amarillo, Texas. The train left Wellington at 9:00 a.m. and proceeded to run normally before reaching a bridge that crosses the Cimarron river. As the train approached the bridge, it experienced a sudden and unexpected

---

[1] Rains had also brought a strict liability cause of action under the Federal Safety Appliance Act, 49 U.S.C. § 20301, *et seq.* At the trial-setting conference held on April 9, 2008, Rains informed the Court that he was abandoning that claim. Accordingly, Rains's cause of action under the Federal Safety Appliance Act is DISMISSED WITH PREJUDICE.

emergency application of its brakes.  This is commonly referred to as an undesirable emergency or "UDE."

A UDE is typically caused by a defect in the train's air-brake system or by the uncoupling of two cars, and it causes the train to come to a complete stop outside of the operator's control.  Once stopped, the train cannot move again until the cause of the UDE is discovered and the defect repaired.  It is the responsibility of the conductor to disembark the train and search for the defect.

The train, which was more than 8000 feet long, came to a complete stop straddling the entire length of the 2600-foot bridge.  Rains got off the train and began his inspection to ascertain the cause of the UDE.  He began walking back east along the south side of the train.  He found no defects on the portion of the train that was west of the bridge.  He continued his inspection on the bridge.

The bridge is a wooden-deck structure, and was designed with a wooden walkway intended for use by BNSF employees who are required to traverse the bridge while performing official duties.  A nineteen-inch high ballast retainer separates the walkway from the track-bed.  On the other side of the walkway is a wooden handrail.  The walkway extends the full length of the bridge.

As the name implies, the ballast retainer acts as a barrier between the train tracks and the adjacent walkway and is intended to prevent ballast on the tracks from spilling onto the walkway surface, which would create a safety hazard.  Ballast is rock that

is placed around and under the railroad ties to provide support and drainage for the ties and ultimately, the track-bed. Ballast presents a safety hazard because it is not stable and tends to shift underfoot.

As Rains proceeded down the walkway inspecting the train, he encountered ballast that had spilled onto the walkway. The spilled ballast was deep, nearly reaching the top of the nineteen-inch retainer, and it was significantly sloped downward toward the edge of the walkway where the handrail was situated. The track-bed above the walkway appeared to Rains to be compacted, or "tamped," and relatively safe to traverse. He climbed up to the track area and continued to walk and inspect the train.

As Rains reached the east end of the bridge, he slipped and fell to his right. He landed in a prone position striking his back on the ballast retainer. The loose ballast on the walkway carried Rains's momentum and he slid under the handrail, nearly falling off the bridge. Rains instinctively grabbed the railing to stop himself from falling off the bridge. This jerked Rains's shoulders and he was unable to pull himself back onto the walkway. He decided to let go and he fell ten feet to the ground landing on his feet and falling to his back. Rains suffered injuries to his shoulder and back and was required to have surgery. His injuries have permanently prevented Rains from returning to work as a train conductor.

Rains testified at his deposition that he does not know why he fell or what caused him to slip. In response to questions, Rains stated, "I don't believe I slipped on the ballast up there [referring to the tamped track area he traversed after encountering the spilled ballast on the walkway]." (Def.'s App. at 24.) He admitted that he could have tripped over his own feet or tripped on the ballast retainer, but he did not believe the ballast caused him to fall. (*Id.*) And, although he was sure that he always watched where he put his feet, he could not explain why he slipped and fell, what caused him to slip and fall, and he conceded that he "could have been the mechanism that caused the fall, [his] own feet." (*Id.*)[2] There are no witnesses to Rains's accident.

II. Analysis

   A.   Summary-Judgment Standard

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit

---

[2] In an affidavit submitted in support of his motion for partial summary judgment, Rains states, "I had made it almost all the way across the bridge when I slipped. As I put my left foot down, it slipped out from underneath me. I lost my balance and fell onto my back, which struck the top of the ballast retainer." (Pl.'s App. at 5.)

4

under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence, make credibility determinations or determine the truth of the matter; rather, the Court is to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and produce evidence that sets forth specific facts showing there is a genuine issue for trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

B.  Discussion

In relevant part, the FELA provides:

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. It is "the exclusive remedy for a railroad employee injured as a result of his employer's negligence." *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 442 (5th Cir. 2001).

To prevail under the FELA, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) the defendant employed the plaintiff with duties advancing such commerce; (3) the plaintiff's injuries were sustained while he was so employed; and (4) the plaintiff's injuries were caused by the defendant's negligence. *Weaver v. Missouri Pac. R.R.,* 152 F.3d 427, 429 (5th Cir. 1998). It is the fourth element that is at issue here, and it is because Rains has failed to put forth sufficient evidence creating a genuine issue of material fact as to whether BNSF's negligence, in whole or in part, caused his injures that BNSF is entitled to summary judgment in its favor.

Although a *prima facie* case of negligence under the FELA must include all elements found in a common-law-negligence action, the common-law proximate-cause standard has been modified by the act. A plaintiff has a significantly reduced burden of proving the causal relationship. *Armstrong v. Kansas City S.R. Co.,* 752 F.2d 1110, 1113 (5th Cir. 1985). Under the FELA, "a railroad will be liable if its negligence or its agent's negligence played any part, even the slightest, in producing the employee's injury." *Id.* At the same time, speculation is not sufficient to meet this less demanding burden of proving causation. The fact that an employee was injured while performing his job is not proof that the railroad's negligence, even in the slightest, produced the injury. "The Act does not make the employer the insurer of the safety of

his employees while they are on duty.  The basis of his liability is his negligence, not the fact that injuries occur.  And that negligence must be 'in whole or in part' the cause of the injury." *Ellis v. Union P.R. Co.*, 329 U.S. 649, 653 (1947).

The undisputed summary-judgment record shows that Rains is the only witness who can account for his slip and fall.  In his deposition, he admits that he cannot say for sure what caused him to slip, though he was fairly certain it was not the ballast on the track side.  Rains states that he could have tripped over his own feet or that he could have tripped over the ballast retainer.

His subsequent affidavit is not helpful either because in it he simply states that as he placed his foot down, it slipped out from underneath him.  He does not state what caused his foot to slip out from underneath him.

Thus, even assuming BNSF was negligent in failing to ensure the bridge walkway was clear of excess and spillover ballast, Rains fails to present sufficient evidence that there is a genuine issue of material fact as to whether BNSF's negligence caused his slip and fall.  Without being able to testify definitively as to what caused him to slip and fall, there is no way for a reasonable jury to find that his slip and fall must have been caused, even in the slightest, by BNSF's alleged negligence.  At best, Rains's testimony leaves causation up to speculation.  And that is insufficient to survive summary judgment.

III. Conclusion

Therefore, for the forgoing reasons, BNSF's motion for summary judgment is GRANTED.  BNSF is entitled to judgment as a matter of law because Rains has failed to present sufficient evidence establishing that there is a genuine issue of material fact as to whether BNSF's alleged negligence, even in the slightest, caused Rains to slip and fall.

SIGNED July 17, 2008.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE